IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PNC BANK, N.A.,                                          Case No.

      Plaintiff,

v.

RICKENBACKER MARINA, INC., ATLAS
YACHT LLC, JAMES A. CAMBECE, JR. and
ELVIS MONS,

      Defendants.

_____

## **COMPLAINT**

Plaintiff, PNC Bank, N.A. ("PNC"), sues Defendants, Rickenbacker Marina, Inc. ("Rickenbacker"), Atlas Yacht LLC ("Atlas"), Elvis Mons ("Mr. Mons"; collectively, the "Boat Defendants"), and James A. Cambece, Jr. ("Mr. Cambece"; collectively with the Boat Defendants, the "Defendants"), and alleges as follows:

## **JURISDICTION AND VENUE**

1.      This is an action for (1) violation of the automatic stay pursuant to 11 U.S.C. § 362(a); (2) declaratory relief pursuant to 28 U.S.C. § 2201 to determine violations of Fla. Stat. § 328.17(5)(a)1 and due process; (3) declaratory relief pursuant to 28 U.S.C. § 2201 to determine certain acts void *ab initio*[1]; (4) conversion; (5) unjust enrichment; (6) fraudulent transfer pursuant to (i) Fla. Stat. §§ 726.105(1)(a) and 726.108; (ii) Fla. Stat. §§ 726.105(1)(b) and 726.108; and (iii) Fla. Stat. §§ 726.106 and 726.108; (7) imposition and foreclosure of an equitable lien.

---

[1] PNC has standing to seek a declaratory judgment with respect to whether Defendants violated the automatic stay because 11 U.S.C. § 362(a) protects all creditors and parties in interest in a bankruptcy case, including PNC as creditor with a claim secured by property of the estate, and because Defendants' actions in violation of the stay caused harm to PNC.

2.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1331, 1332 and 1333.

3.      PNC is a Delaware corporation with its principal place of business in Pittsburgh, Pennsylvania.

4.      Upon information and belief, Mr. Cambece is domiciled in Massachusetts.

5.      Upon information and belief, Rickenbacker is a Florida corporation with its principal place of business in Florida.

6.      Upon information and belief, Atlas is a Florida limited liability corporation with its principal place of business in Florida.

7.      Upon information and belief, Mr. Mons is domiciled in Florida.

8.      Venue is proper pursuant to 28 U.S.C. § 1408.

## PROCEDURAL AND FACTUAL BACKGROUND

### The Undisclosed Income

9.      On May 17, 2019 (the "Petition Date"), Mr. Cambece filed a voluntary petition for relief (the "Petition") under Chapter 13 of the Bankruptcy Code, initiating bankruptcy case number 19-11698-JEB in the United States Bankruptcy Court for the Eastern District of Massachusetts (the "Bankruptcy Case").

10.      On the Petition Date, Mr. Cambece was represented by David C. Crossley, Esq. and Crossley Law Offices, LLC (collectively, "Crossley").

11.      On June 14, 2019, Mr. Cambece, through Crossley, filed a motion to convert the case to Chapter 11, which was granted by the Court on June 27, 2019.

12.      On February 13, 2020, Mr. Cambece, through Crossley, filed a motion to convert the case to Chapter 7, which was granted by the Court on March 2, 2020.

13.      Thereafter, the Chapter 7 Trustee Mark DeGiacomo (the "Trustee") was appointed.

14.     Mr. Cambece is an attorney whose practice primarily involves collecting consumer debts for clients who hold large debt portfolios.

15.     As of the Petition date, Mr. Cambece collected debt for Exelero Corporation, an entity that was formed in 2002 ("Exelero"), which was owned by Mr. Cambece's mother.

16.     Mr. Cambece used his income from performing work for Exelero to pay his personal and business expenses pre-petition.

17.     Mr. Cambece did not disclose any interest in Exelero on Schedule A/B of the Petition, did not disclose his source of income from Exelero on his Statement of Financial Affairs, and otherwise gave no indication on his schedules that he could otherwise have been deemed an insider or imputed owner of Exelero.

18.     At the Petition Date, Crossley knew that Exelero was indeed an asset of Mr. Cambece.

19.     From June 27, 2019, through March 2, 2020, while in Chapter 11, Mr. Cambece collected approximately $482,776.46 from Exelero (the "Chapter 11 Collections"), which he depleted outside of the bankruptcy process on personal and other expenses.

20.     Mr. Cambece, as an attorney, knew, or should have known, that the use of the Chapter 11 Collections during the pendency of a bankruptcy should have been made available to pay creditors.

21.     Crossley, as a bankruptcy practitioner, also knew, or should have known, that the use of the Chapter 11 Collections during the pendency of a bankruptcy should have been made available to pay creditors.

22.     Following conversion to Chapter 7, Mr. Cambece collected and spent an additional approximately $834,721.41 from Exelero (the "Chapter 7 Collections"; collectively with the

Chapter 11 Collections, the "Collections") outside of the bankruptcy process, which continued until May 7, 2021, when the Trustee obtained a preliminary injunction requiring Mr. Cambece to account for and turnover Exelero collections to the Trustee.

23.    Mr. Cambece, as an attorney, knew, or should have known, that the use of the Chapter 11 Collections during the pendency of a bankruptcy should have been made available to pay creditors.

24.    Crossley, as a bankruptcy practitioner, also knew, or should have known, that the use of the Chapter 11 Collections during the pendency of a bankruptcy should have been made available to pay creditors.

25.    On April 6, 2022, the Trustee filed a complaint against Crossley for negligence in the Bankruptcy Case, which was settled on behalf of the Trustee.

**The Boat Transfer**

26.    On Schedule A/B of the Petition, Mr. Cambece listed a 2006 SeaRay, Sedan Bridge 44' (the "Boat"), with a value of "Unknown."

27.    On Schedule D of the Petition, Mr. Cambece listed a security interest in the Boat by PNC, with a lien in the amount of $369,897.00 (the "Lien").

28.    As of the Petition date, PNC was owed $222,677.10 (the "Secured Claim").

29.    The Lien stemmed from a duly-recorded ship mortgage (the "Preferred Mortgage"), executed by Mr. Cambece on May 16, 2006, which was recorded on June 1, 2006 with the United States Coast Guard's National Vessel Documentation Center.

30.    In August 2018, the Boat began being stored and/or docked at Rickenbacker.

31.    Between February and April 2019, Mr. Cambece had become delinquent in his payments to Rickenbacker, and Rickenbacker made efforts to assert a possessory lien on the Boat.

32.     On April 18, 2019, Rickenbacker purportedly held a non-judicial sale under Florida state law, Fla. Stat. § 328.17, at which it also purportedly obtained title to the Boat at an auction, for the amount of $8,000.00 (the "Boat Acquisition").[2]

33.     Specifically, based on the foregoing, a certificate of title was issued by the State of Florida to Rickenbacker on May 6, 2019.

34.     However, the notice of sale/auction required by Fla. Stat. § 328.17 was neither provided to Mr. Cambece nor to PNC.  As such, in derogation of their due process rights with respect to their respective interests in the Boat, neither Mr. Cambece nor PNC received actual notice of the sale in April 2019 prior to its occurrence.  Without that notice, neither could protect their respective interests in the Boat thereafter prior to the Transfer and the Sale (defined below) and the purported transfer of title thereto.

35.     On or about January 15, 2020, after the Petition Date, Rickenbacker purportedly transferred title to the Boat to Atlas (the "Transfer").

36.     On May 29, 2020, after the Petition Date, Mr. Mons entered into a sale agreement with Atlas and Aabad R. Melwani, Esq., to purchase the Boat.

37.     On June 9, 2020, Mr. Mons purportedly purchased the Boat for $170,000.00 (the "Sale").

38.     On July 21, 2020, PNC erroneously recorded a Satisfaction of Mortgage as to the Boat at the demand of counsel for Rickenbacker, who erroneously asserted to PNC that the ship mortgage had been satisfied.

39.     On September 8, 2020, Rickenbacker filed Proof of Claim 25-1 in the Bankruptcy

---

[2] To the extent Rickenbacker had any interest in the Boat pre-petition, such interest was subject and junior to PNC's lien; post-petition, such interest was subject to the estate's interest in the Boat, up until the time the Trustee abandoned such interest.

Case, in the amount of $45,045.00 for "[d]ockage fees for the Debtor's vessel." (Claim 25-1, Page 2 of 3). The claim listed the value of the Boat in the amount of $170,000.00. (*Id.*) The claim was signed by Aabad Melwani, as president of Rickenbacker. (*Id.* at Page 3 of 3).

40. On September 10, 2020, PNC re-filed its Preferred Mortgage against the Boat.

41. On October 21, 2022, the Trustee filed a notice of his intention to abandon the estate's interest in the Boat (the "Notice").

42. Within the Notice, the Trustee stated that he believed the fair market value of the Boat, as of the time of filing the notice, was "approximately $226,200." (*Id.* at Page 2 of 9).

43. After the requisite period of time, such interest was abandoned by virtue of no objections filed as to the Notice.

44. Since the filing of the Notice, PNC has attempted to resolve the issues presented in this complaint, but has been unable to do so.

45. At the time of the Acquisition, such purported lien sale did not provide proper due process to Mr. Cambece nor PNC, as neither was notified that their rights were going to be affected.

46. Specifically, as a result of Rickenbacker's non-compliance with Fla. Stat. § 328.17, Atlas failed to gain title to the Boat as a matter of law, and wrongfully took possession of the Boat.[3]

47. Moreover, because of Rickenbacker's non-compliance with Fla. Stat. § 328.17, and the resulting failure to effect a transfer of title to the Boat to Atlas as a matter of law, Mr. Cambece has thereafter remained the owner of the Boat, notwithstanding the Transfer to Atlas.[4]

---

[3] *See George v. A 2005 DONZI Motor Yacht, Hull Identification No. DNAFA008A505*, 09-81145-CIV-VITUNAC, 2009 WL 3417707, at *3 (S.D. Fla. Oct. 22, 2009) (applying Fla. Stat. § 328.17; discussing the burdens with respect to establishing compliance with that statute; and finding the defendant marina failed to establish compliance with the statute resulting in the failure to effect a transfer of title to the vessel through a non-judicial sale as provided for in the statute).

[4] *See id.*

48.    As a result of the *ultra vires* non-judicial sale, at the time of both the Transfer and the Sale, Mr. Cambece's interest in the Boat was property of the bankruptcy estate.

49.    At the time of both the Transfer and the Sale, the automatic stay provided by 11 U.S.C. § 362(a) prevented Rickenbacker from taking any act to obtain possession of property of Mr. Cambece's estate or of property from Mr. Cambece's estate or to exercise control over property of Mr. Cambece's estate.

50.    Due to the extensive improper actions committed collectively by the Defendants, PNC has suffered great harm in the form of the loss of its security interest in the Boat, the extensive fees and costs associated with reestablishing its security interest in the Boat, the diminution in value of the Boat at the hands of the Defendants, the lack of adequate protection, and the fees and costs associated with this adversary proceeding.

51.    On August 28, 2023, PNC initiated an adversary proceeding as against Rickenbacker, Atlas and Mr. Mons.

52.    On December 12, 2023, the Court held a hearing on the motion to dismiss brought by the Defendants, and ruled that "it does not have subject matter jurisdiction over the . . . Boat since the Boat was abandoned by the Trustee and is no longer property of the estate.  Since the other relief sought . . . is premised on the Court's jurisdiction over the Boat, the Court finds no subject matter jurisdiction.  To the extent the Court has subject matter jurisdiction over the Boat and the claims asserted . . . , for the reasons set forth on the record, the Court abstains from exercising such jurisdiction under Section 1334(c)(l) of Title 28."  (Pro Memorandum and Order dated 12/13/2023, a true and correct copy of which is attached hereto as **Exhibit A**.)

53.    All conditions precedent to the bringing of this action have been met or they have been waived.

**Count I – as Against the Boat Defendants**
**Action for Declaratory Judgment —**
**Violation of Fla. Stat. § 328.17(5)(a)1 and Due Process**

54.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

55.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Rickenbacker did not provide adequate notice to Mr. Cambece or PNC that their rights in the Boat were going to be affected as a matter of law.

56.     Specifically, Fla. Stat. § 328.17(5)(a)1 provides:

> The marina shall provide written notice to the vessel's owner, delivered in person or by certified mail to the owner's last known address. The notice shall also be conspicuously posted at the marina and on the vessel.
>
> 2.   In addition to notice provided to the vessel owner under subparagraph 1., the marina shall provide written notice to each person or entity that:
>
> . . .
> b.   Holds a preferred ship mortgage or has filed a claim of lien with the United States Coast Guard Vessel Documentation Center.

57.     Neither Mr. Cambece nor PNC received written notice pursuant to Fla. Stat. § 328.17(5)(a)1.

58.     Because Mr. Cambece and PNC did not have notice that their rights were going to be affected, the Acquisition (a) violated both Florida law and the due process clause of the 14th Amendment to the U.S. Constitution, and (b) lacked the requisite due process to effectively convey any property interest in the Boat to Rickenbacker.[5]

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and

---

[5] *See Mennonite Bd. of Missions v. Adams,* 462 U.S. 791 (1983).

against the Boat Defendants, declaring that the Acquisition violated both Fla. Stat. § 328.17(5)(a)1 and its due process rights, and did not convey any property interest in the Boat to Rickenbacker, and granting such other and further relief as the Court deems just and proper.

**Count II – as Against the Boat Defendants**
**Action for Declaratory Judgment – the Boat Was Property of the Estate**

59.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

60.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring as a matter of law that the Boat was property of the estate pursuant to 11 U.S.C. § 541(a) over which the bankruptcy court had exclusive jurisdiction under 28 U.S.C. § 1334(e) before the Boat was abandoned from the estate by the Trustee.

61.     Rickenbacker did not provide adequate notice to Mr. Cambece or PNC in accordance with Florida law or consistent with the due process rights of Mr. Cambece and PNC.

62.     Because proper notice was not provided, the Acquisition could not properly and did not convey title to the Boat to Rickenbacker.

63.     As such, because the conveyance of title was invalid as a matter of law, Mr. Cambece still retained an ownership interest in the Boat as of the Petition Date and the Boat therefore became property of his bankruptcy estate.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Boat Defendants, declaring the Boat became property of the estate as of the Petition Date and remained property of the estate until it was abandoned by the Trustee, and granting such other and further relief as the Court deems just and proper.

9

**Count III – as Against the Boat Defendants**
**Action for Declaratory Judgment – Automatic Stay Violation**

64.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

65.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Rickenbacker, Atlas and Mr. Mons violated the automatic stay by obtaining and exercising control over property of the estate.

66.     As of the Petition Date, the Trustee acquired all of Mr. Cambece's legal and equitable ownership interests in the Boat, subject to PNC's lien.

67.     The purpose of the automatic stay is to protect not only the debtor, but also the creditors and parties in interest in a bankruptcy case, including creditors holding claims secured by property of the estate, like PNC.

68.     Prior to the Transfer, Rickenbacker was required to seek relief from the automatic stay to adjudicate his alleged ownership interest in the Boat and/or to allow him to effect the Transfer of the Boat to Atlas.

69.     Rickenbacker did not seek relief from the automatic stay.

70.     Because Rickenbacker did not seek relief from the automatic stay prior to the Transfer, Rickenbacker violated the automatic stay when it transferred the Boat to Atlas.

71.     Prior to the Sale, Atlas was required to seek relief from the automatic stay to adjudicate its alleged ownership interest in the Boat and/or to allow it to effect the Sale of the Boat to Mr. Mons.

72.     Atlas did not seek relief from the automatic stay.

73.     Because Atlas did not seek relief from the automatic stay prior to the Sale, Atlas violated the automatic stay when it allegedly sold the Boat to Mr. Mons.

10

74.     After the Sale, PNC and the Trustee tried to mitigate the damages they suffered as a result of the violations of the automatic stay by the Boat Defendants.  They attempted to negotiate for value to the estate given the actions of Rickenbacker and Atlas that violated the automatic stay.

75.     Mr. Mons knew or should have known that the Sale of the Boat to him by Atlas Boat was or may have been prohibited by the automatic stay.

76.     As such, Mr. Mons was required to adjudicate his alleged ownership interest in the Boat and/or to allow him to complete the Sale of the Boat from Atlas.  Mr. Mons did not seek relief from the automatic stay at any time prior to the closing of the Bankruptcy Case.

77.     As of the date of filing this complaint, Mr. Mons did not seek relief from the automatic stay.

78.     Because Mr. Mons did not seek relief from the automatic stay prior to the Sale, or thereafter, Mr. Mons violated the automatic stay.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Boat Defendants, declaring that Rickenbacker, Atlas and Mr. Mons, jointly and severally, violated the automatic stay during the time that the Boat was property of the bankruptcy estate of Mr. Cambece, and granting such other and further relief as the Court deems just and proper.

**Count IV – as Against the Boat Defendants**
**Action for Declaratory Judgment All Transactions Are Void *ab Initio***

79.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

80.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that the Acquisition, the Transfer, and the Sale all are void *ab initio* as a matter of law.

81.     Rickenbacker did not provide the statutorily-required notice in violation of Florida

law and the due process clause prior to the Acquisition.

82.     As such, the Acquisition is void *ab initio*.

83.     Further, even if Rickenbacker had provided appropriate notice, wharfage fees are junior in rank to PNC's lien since PNC's First Preferred Ship Mortgage ("FPSM") was filed on June 1, 2006, prior to the time the alleged wharfage fees were allegedly incurred in 2018.[6]

84.     As such, even if the Acquisition complied with Florida law and the due process clause—which, it did not—Rickenbacker's interest in the Boat as of the Petition Date was inferior and subject to PNC's security interest via the FPSM.

85.     Any action taken after the Acquisition, without the proper release of PNC's FPSM, is void *ab initio*.

86.     Because Rickenbacker did not first obtain relief from the automatic stay, the Transfer of title from Rickenbacker to Atlas during the Bankruptcy Case was a violation of the automatic stay and was void *ab initio*.

87.     Because the Transfer was void *ab initio,* the Boat remained property of the estate at the time of the purported Sale of the Boat by Atlas to Mr. Mons.

88.     Because Atlas did not first obtain relief from the automatic stay, the Sale of the Boat by Atlas to Mr. Mons during the Bankruptcy Case was void *ab initio* as a matter of law.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Boat Defendants, declaring the Acquisition, the Transfer, and the Sale to be void *ab initio*, and granting such other and further relief as the Court deems just and proper.

---

[6] Preferred ship mortgages outrank maritime liens for necessaries when filed prior to date the services giving rise to the maritime lien were incurred.  *Westinghouse Credit Corp. v. O/S DOROTHY CLAIRE*, 732 F.Supp 59, 61-62 (E.D. Tx. 1989).

**Count V – as Against the Boat Defendants**
**Action for Declaratory Judgment–**
**the Trustee's Abandonment Was In Favor of Mr. Cambece**

89.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

90.     This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the abandonment of the Boat was in favor of Mr. Cambece, the true owner of the Boat, and not in favor of Rickenbacker, Atlas, or Mr. Mons.

91.     As of the Petition Date, the Trustee acquired all of Mr. Cambece's legal and equitable ownership interests in the Boat.

92.     Because the Acquisition was void *ab initio*, Mr. Cambece still had an ownership interest in the Boat as of the Petition Date, subject to PNC's lien.

93.     Further, even if Rickenbacker did have any interest—which it did not—any security interest Rickenbacker may have had in the Boat as of the Petition Date was junior and subject to PNC's security interest in the Boat.

94.     By virtue of the Boat becoming property of the bankruptcy estate as of the Petition Date, the automatic stay prevented Rickenbacker from exercising control over the Boat and from attempting to sell the Boat to Atlas to the detriment of the bankruptcy estate and/or PNC.

95.     Thus, when the Trustee abandoned the Boat, it was abandoned in favor of Mr. Cambece, the then-owner of the Boat.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Boat Defendants, declaring that the Trustee's abandonment of the Boat from the bankruptcy estate was made in favor of Mr. Cambece, subject to PNC's lien, and granting such other and further relief as the Court deems just and proper.

13

## Count VI – as Against the Defendants
### Action for Conversion

96.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 53 herein.

97.     This is an action for conversion as against the Defendants.

98.     Rickenbacker took possession of the Boat, then continued to assert an ownership or right to possession of the Boat, and did so in a matter inconsistent with PNC's security interest via the FPSM in the Boat and/or Mr. Cambece's ownership interest in the Boat pre-Petition Date and/or the Trustee's possessory interest in the Boat post-Petition Date.

99.     Atlas took possession of the Boat, then continued to assert an ownership or right to possession of the Boat, and did so in a matter inconsistent with PNC's security interest via the FPSM in the Boat and/or Mr. Cambece's ownership interest in the Boat pre-Petition Date and/or the Trustee's possessory interest in the Boat post-Petition Date.

100.    Mr. Mons took possession of the Boat, then continued to assert an ownership or right to possession of the Boat, and did so in a matter inconsistent with PNC's security interest via the FPSM in the Boat and/or Mr. Cambece's ownership interest in the Boat pre-Petition Date and/or the Trustee's possessory interest in the Boat post-Petition Date.

101.    Mr. Cambece took possession of the Collections, including the Secured Claim portion thereof, then spent the Collections and the Secured Claim portion, and did so in a matter inconsistent with PNC's right to the Secured Claim portion of the Collections.

102.    The Boat Defendants have refused to release the Boat to PNC, or otherwise validate the existence of PNC's FPSM in the Boat.

103.    The Boat Defendants have deprived PNC of its right to its lien interest in the Boat.

104.    Mr. Cambece has refused to transfer the Secured Claim to PNC, and has refused to

cooperate in working to reinstate PNC's lien interest in the Boat.

105.    Mr. Cambece has deprived PNC of its right to its lien interest in the Secured Claim and/or the Boat.

106.    These deprivations by the Defendants are inconsistent with PNC's property rights.

107.    As a direct and proximate result of the Defendants' collective actions, PNC has been damaged in the amount of $222,677.10, plus its contractual interest, attorneys' fees, costs, and pre-judgment interest.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Defendants, for damages in the amount of $222,677.10, additional damages for lost contractual interest and other consequential damages, the costs incurred in the prosecution of this action, reasonable attorneys' fees, pre- and post-judgment interest, and granting such other and further relief as the Court deems just and proper.

### Count VII – as Against Mr. Cambece
### Action for Unjust Enrichment

108.    PNC realleges and incorporates the allegations contained in Paragraphs 1 through 53 herein.

109.    This is an action for unjust enrichment as against Mr. Cambece.

110.    Mr. Cambece purchased the Boat by using funds provided by PNC.

111.    As a result of PNC providing such purchase money funds, PNC properly perfected and filed its FPSM in the Boat.

112.    Consisted with the terms of the documents securing the FPSM in the Boat, Mr. Cambece was to make payments to PNC until the amount owed to PNC was paid in full, at which point PNC would release its FPSM in the Boat.

113.    Irrespective of the Bankruptcy Case, Mr. Cambece was required, per the FPSM, to

repay PNC its Secured Claim.

114.    Once the Bankruptcy Case was converted to Chapter 7, Mr. Cambece was required to either reaffirm the debt owed to PNC (the Secured Claim), or otherwise surrender the Boat to PNC so that it could foreclose its FPSM.

115.    To the extent Mr. Cambece became aware of the Boat Acquisition prior to the Petition Date, Mr. Cambece had an affirmative obligation to notify PNC so that PNC could ensure its security interest in the Boat remained intact.

116.    Mr. Cambece knew that PNC provided purchase money funds to him to acquire the Boat, and voluntarily accepted and retained the benefits conferred upon him by PNC.

117.    The circumstances are such that it would be inequitable for Mr. Cambece to retain the benefits of the funds used to purchase the Boat without paying the value thereof to PNC.

118.    To date, Mr. Cambece has failed and refused to repay PNC for the value of the benefits conferred upon Mr. Cambece to purchase the Boat.

119.    PNC has been damaged in the amount of $222,677.10, plus its contractual interest, attorneys' fees, costs, and pre-judgment interest as a result of Mr. Cambece's failure to repay.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Defendants, for damages in the amount of $222,677.10, additional damages for lost contractual interest and other consequential damages, the costs incurred in the prosecution of this action, reasonable attorneys' fees, pre- and post-judgment interest, and granting such other and further relief as the Court deems just and proper.

**Count VIII – as Against the Defendants**
**Action for Fraudulent Transfer –**
**Actual Fraud Pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.108**

120.    PNC realleges and incorporates the allegations contained in Paragraphs 1 through 53 herein.

121.    This is an action for fraudulent transfer as against the Defendants pursuant to Fla. Stat. §§ 726.105(1)(a) and 726.108.

122.    Mr. Cambece utilized the Collections post-Petition Date with the intention and for the purpose of hindering, delaying, and defrauding PNC and other creditors of Mr. Cambece, as evidenced by, among others, the following badges of fraud:

    a.    The Collections came from an insider of Mr. Cambece, namely, his mother's company and/or his own ownership interest in the company;

    b.    The use of the Collections was concealed from the Trustee and all other creditors of Mr. Cambece's various estates;

    c.    Before the use of the Collections occurred, Mr. Cambece was in the middle of his Bankruptcy Case and had also been sued by several creditors;

    d.    The use of the Collections was substantially all of Mr. Cambece's assets;

    e.    Mr. Cambece concealed the Collections from his bankruptcy schedules;

    f.    The value of consideration received by Mr. Cambece was reasonably equivalent to the value of the asset transferred;

    g.    Mr. Cambece was insolvent at the time the use of the Collections occurred as he was in his Bankruptcy Case; and

    h.    The use of the Collections occurred shortly after substantial debts were incurred;

123.     Because Mr. Cambece's use of the Collections was actually fraudulent, PNC is entitled to avoid the post-Petition Date Transfer and/or Sale of the Boat to the extent necessary to satisfy PNC's claim, or attach against the Boat irrespective of the Sale to Mr. Mons.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Defendants, avoiding the Transfer and/or Sale of the Boat pursuant to Fla. Stat. §§ 726.105(a)(1)(a) and 726.108, entitling PNC to recover the Boat or the value of its Secured Claim in the Boat, together with the costs incurred in the prosecution of this action, reasonable attorneys' fees, pre- and post-judgment interest, and granting such other and further relief as the Court deems just and proper.

**Count IX – as Against the Defendants**
**Action for Fraudulent Transfer –**
**Constructive Fraud Pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.108**

124.     PNC realleges and incorporates the allegations contained in Paragraphs 1 through 53 herein.

125.     This is an action for fraudulent transfer as against the Defendants pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.108.

126.     Mr. Cambece did not receive reasonably equivalent value in exchange for the Boat Acquisition, Transfer and/or Sale.

127.     At the time of the Boat Acquisition and/or Transfer and/or Sale, Mr. Cambece intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

128.     Because Boat Acquisition and/or Transfer and/or Sale is constructively fraudulent, PNC is entitled to avoid the post-Petition Date Transfer and/or Sale of the Boat to the extent necessary to satisfy PNC's claim, or attach against the Boat irrespective of the Sale to Mr. Mons.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Defendants, avoiding the Transfer and/or Sale of the Boat pursuant to Fla. Stat. §§ 726.105(a)(1)(b) and 726.108, entitling PNC to recover the Boat or the value of its Secured Claim in the Boat, together with the costs incurred in the prosecution of this action, reasonable attorneys' fees, pre- and post-judgment interest, and granting such other and further relief as the Court deems just and proper.

**Count X – as Against the Defendants**
**Action for Fraudulent Transfer –**
**Constructive Fraud Pursuant to Fla. Stat. §§ 726.105(1)(b) and 726.108**

129.    PNC realleges and incorporates the allegations contained in Paragraphs 1 through 53 herein.

130.    This is an action for fraudulent transfer as against the Defendants pursuant to Fla. Stat. §§ 726.106 and 726.108.

131.    Mr. Cambece did not receive reasonably equivalent value in exchange for the Boat Acquisition and/or the Transfer and/or the Sale.

132.    At the Time of the Boat Acquisition and/or the Transfer and/or the Sale, Mr. Cambece was insolvent.

133.    Because Boat Acquisition and/or Transfer and/or Sale is constructively fraudulent, PNC is entitled to avoid the post-Petition Date Transfer and/or Sale of the Boat to the extent necessary to satisfy PNC's claim, or attach against the Boat irrespective of the Sale to Mr. Mons.

WHEREFORE, PNC respectfully requests the Court enter a final judgment in its favor and against the Defendants, avoiding the Transfer and/or Sale of the Boat pursuant to Fla. Stat. §§ 726.106 and 726.108, entitling PNC to recover the Boat or the value of its Secured Claim in the Boat, together with the costs incurred in the prosecution of this action, reasonable attorneys' fees,

pre- and post-judgment interest, and granting such other and further relief as the Court deems just and proper.

**Count XI – as Against the Defendants**
**Action for Imposition and Foreclosure of an Equitable Lien**

134.    PNC realleges and incorporates the allegations contained in Paragraphs 1 through 9, and 26 through 53 herein.

135.    In the alternative, PNC seeks the imposition of an equitable lien by the Court.

136.    Mr. Cambece executed the Preferred Mortgage in order to obtain funds from PNC for the purchase of the Boat.

137.    PNC is the current owner and holder of the Preferred Mortgage.

138.    The Preferred Mortgage is in default due to Mr. Cambece's failure to make all payments when due.

139.    As a result of (i) Rickenbacker's failure to give proper notice to PNC and/or Mr. Cambece prior to the purported sale of the Boat, resulting in the Boat Acquisition; (ii) the post-petition Transfer and Sale of the Boat to Atlas and subsequently to Mr. Mons in violation of the automatic stay in the Bankruptcy Case; and (iii) the erroneous satisfaction of the Preferred Mortgage at the demand of counsel for Rickenbacker, PNC is unable to enforce its Preferred Mortgage on the Boat as intended by PNC and Mr. Cambece.

140.    PNC, however, has an equitable interest in the Boat, pursuant to the money lent to facilitate the purchase of the Boat by Mr. Cambece.

141.    The Boat Acquisition, the Transfer, and the Sale of the Boat occurring on or after April 18, 2019 were done with notice of PNC's duly recorded Preferred Mortgage, which had not been erroneously satisfied at the time.

142.    Unless this Court takes jurisdiction in equity, PNC will suffer irreparable damage

by reason of the loss of its security interest in the Boat.

143.    PNC is entitled to have the Court impose an equitable lien on the Boat in the amount that is due and owing under the Preferred Mortgage, and to have the Court declare and adjudge that such lien is superior in right, time, and dignity to the claims and liens of all Defendants.

144.    Mr. Mons purportedly owns and holds possession of the Boat, but any such right, title, or interest is subordinate and inferior to the PNC's lien.

145.    PNC has no adequate remedy at law, and requires the imposition of an equitable lien to secure the money lent to Mr. Cambece in order to purchase the Boat, plus PNC's additional expenses, and the costs and attorney's fees of this action.

146.    PNC alleges that the claims of the remaining Defendants are secondary, junior, inferior and subject to the prior claim of lien of PNC.  More particularly, the remaining Defendants may claim some right, title and interest in and to the mortgaged property in the following manner:

a.      The Defendant, RICKENBACKER MARINA, INC., may claim some right, title or interest in the Boat by virtue of the Boat Acquisition; however, said interest, if any, is subordinate, junior, and inferior to PNC's lien created by the debt stemming from the Preferred Mortgage.

b.      The Defendant, ATLAS YACHT LLC, may claim some right, title or interest in the Boat by virtue of the Transfer; however, said interest, if any, is subordinate, junior, and inferior to PNC's lien created by the debt stemming from the Preferred Mortgage.

c.      The Defendant, JAMES A. CAMBECE, JR., may claim some right, title or interest in the Boat by virtue of his status of ownership and/or possession of the Boat prior to the Boat Acquisition; however, said interest, if any, is subordinate,

junior, and inferior to PNC's lien created by the debt stemming from the Preferred Mortgage.

WHEREFORE, PNC requests that this Court impose an equitable lien on the above-described Boat to secure such debt, and ordering that if the sum found due be not first paid, that the Boat be sold by judicial sale and the proceeds be applied towards satisfaction of the debt stemming from the Preferred Mortgage, and that all persons claiming by, through, or under the Defendants since the filing of the Notice of Lis Pendens be forever foreclosed.

Dated: June 7, 2024.                          **McGLINCHEY STAFFORD**

*/s/ William L. Grimsley, Esq.*
Adina L. Pollan, Esq.
Florida Bar No. 15639
apollan@mcglinchey.com
nreid@mcglinchey.com
William L. Grimsley, Esq.
Florida Bar No. 84226
wgrimsley@mcglinchey.com
cgipson@mcglinchey.com
10407 Centurion Pkwy. N., Suite 200
Jacksonville, Florida 32256
Telephone (904) 224-4487
Facsimile (904) 212-1464

***Counsel for PNC Bank, N.A.***

# Exhibit A



UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>James A. Cambece, Jr.,<br>        Debtor | Chapter7<br>Case No. 19-11698-JEB |
| PNC Bank, N.A., and James A. Cambece, Jr.,<br>Plaintiffs<br><br>v.<br><br>Rickenbacker Marina, Inc., Atlas Yacht LLC,<br>and Elvis Mons,<br>Defendants | Adversary Proceeding<br>No. 23-01049-JEB |

**Proceeding Memorandum and Order**

**MATTER:**
#24 Motion to Dismiss Adversary Proceeding Re: [1] Complaint

**Decision set forth more fully as follows:**
Hearing held on December 12, 2023. For the reasons set forth on the record and in this Order, the Motion is granted as follows. In ruling on the Motion, the Court has considered the Amended Complaint filed on November 20, 2023.The Court finds that it does not have subject matter jurisdiction over the 2006 SeaRay Sedan Bridge boat ("Boat") since the Boat was abandoned by the Trustee and is no longer property of the estate. Since the other relief sought in the Amended Complaint is premised on the Court's jurisdiction over the Boat, the Court finds no subject matter jurisdiction.To the extent the Court has subject matter jurisdiction over the Boat and the claims asserted in the Amended Complaint, for the reasons set forth on the record, the Court abstains from exercising such jursidction under Section 1334(c)(1) of Title 28.

The Motion is granted and the adversary proceeding is dismissed.

Dated: 12/13/2023

By the Court,

*Janet E. Bostwick*

Janet E. Bostwick
United States Bankruptcy Judge